**AMERICAN PORTLAND CEMENT ALLIANCE, et al., Petitioners,**

v.

**ENVIRONMENTAL PROTECTION AGENCY and Carol M. Browner, Respondents,**

**Cement Kiln Recycling Coalition, et al., Intervenors.**

Nos. 95–1230, 95–1231, 95–1237 and 95–1252.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 28, 1996.

Decided Dec. 13, 1996.

Richard G. Stoll, Jr., argued the cause, for petitioners American Portland Cement Alliance and Cement Kiln Recycling Coalition, with whom David P. Novello, was on the briefs. Larry D. Sharp, Washington, DC, entered an appearance.

David R. Case, Washington, DC, argued the cause and filed the briefs, for petitioners Safe Cement Alliance of Texas, et al.

Mary F. Edgar, Attorney, U.S. Department of Justice, argued the cause, for respondents, with whom Lois J. Schiffer, Assistant Attorney General, Washington, DC, was on the brief. Lawrence E. Starfield, Assistant General Counsel, Environmental Protection Agency, entered an appearance.

Before: WALD, HENDERSON and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

The sole question in this appeal is whether this court has jurisdiction under § 7006(a)(1) of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §§ 6901 *et seq.* (1982), to review petitions challenging the "Regulatory Determination on Cement Kiln Dust," issued by the Environmental Protection Agency ("EPA"). 60 Fed.Reg. 7,366 (Feb. 7, 1995). In the Regulatory Determination, EPA decided that cement kiln dust did not warrant full hazardous waste regulation under Subtitle C of RCRA, 42 U.S.C. §§ 6921–6939e and that it should instead be subject to tailored standards to be developed by EPA. Petitioner Safe Cement Alliance of Texas, et al. ("Safe Cement"), a coalition of environmental and citizens' groups, which include persons residing near cement kilns, challenges as arbitrary and capricious EPA's decision not to apply full Subtitle C regulation. Both Safe Cement and EPA contend that the court has jurisdiction to review Safe Cement's petition. Petitioner American Portland Cement Alliance, et al. ("American Portland"), a trade association representing cement manufacturers and marketers, maintains that this court lacks jurisdiction over the petition because EPA's Regulatory Determination does not constitute one of the three actions designated as reviewable under RCRA § 7006(a)(1), but instead is simply a determination to undertake rulemaking in future.[1] Alternatively, if the court determines that it has jurisdiction over the Regulatory Determination, American Portland seeks review of its petition, filed protectively, which maintains that EPA's decision to subject kiln dust to tailored standards is legally, technically, and scientifically flawed.[2] Because we conclude that the Reg-

1. Additional parties in this consolidated appeal include the Cement Kiln Recycling Coalition, the Environmental Technology Council, the Safe Cement Alliance of Texas, Montanans Against Toxic Burning, Inc., Huron Environmental Activist League, Desert Citizens Against Pollution, Citizens Aware and United for a Safe Environment, Downwinders at Risk, Adans for a Clean Environment, Lehigh Valley Coalition for a Safe Environment, Green Environmental Coalition, Inc., Montanans for a Healthy Future, Inc., Sierra Club, Alamo Cement Company, Ltd., Armstrong Cement and Supply Co., Inc., Capitol Cement Corporation, Dragon Products Company, Inc., Glens Falls Cement Co., Inc., Phoenix Cement

Company, Riverside Cement Company, Roanoke Cement Company, and Carol M. Browner, the Administrator of the EPA. Lafarge Corporation and Ash Grove Cement Company are intervenors.

2. American Portland filed its petition to protect its right of review and acknowledges that if Safe Cement's claims concerning the Regulatory Determination are unreviewable, American Portland's challenge to EPA's decision to promulgate specialized cement kiln dust regulations should be dismissed.

ulatory Determination is not reviewable under § 7006(a)(1), we dismiss the petitions for lack of jurisdiction.

## I.

RCRA subtitle C, 42 U.S.C. §§ 6921–6939e, establishes a "cradle to grave" federal regulatory system for the treatment, storage, and disposal of hazardous wastes. *See Chemical Waste Management, Inc. v. Hunt,* 504 U.S. 334, 338 n. 1, 112 S.Ct. 2009, 2011–12 n. 1, 119 L.Ed.2d 121 (1992). In 1980, Congress adopted the "Bevill Amendment," which exempted certain low-toxicity wastes, including cement kiln dust, from the otherwise applicable subtitle C scheme for hazardous wastes. *See* RCRA § 3001(b)(3)(A), 42 U.S.C. § 6921(b)(3)(A) (1995).[3] Pursuant to the Bevill Amendment, EPA took three steps. *Id.* § 3001(b)(3)(C), 42 U.S.C. § 6921(b)(3)(C) (1995). First, it promulgated a regulation excluding cement kiln dust from the definition of hazardous waste. 40 C.F.R. § 261.4(b)(8) (1995). Second, pursuant to RCRA § 8002(o), it submitted a report to Congress on the results of a "detailed and comprehensive study of the adverse effects on human health and the environment, if any, of the disposal of cement kiln dust waste." 42 U.S.C. § 6982(o) (1995). Third, as required by RCRA § 3001(b)(3)(C),[4] based on its report to Congress, comments on the report, and data collected after its submission to Congress, on February 7, 1995, EPA published its Regulatory Determination on Cement Kiln Dust. *See* 60 Fed.Reg. 7,366.

In its Determination, EPA announced its conclusion that "additional control of [cement kiln dust] is warranted in order to protect the public from human health risks and to prevent environmental damage resulting from current disposal of this waste." *Id.* at 7,366. Rather than subjecting cement kiln dust to existing Subtitle C regulations applicable to all hazardous wastes not exempted by the Bevill Amendment, an approach EPA judged not "feasible" and "prohibitively burdensome" on the cement industry, EPA undertook to "develop a program tailored to local cement plant conditions to control the specific risks identified while minimizing compliance costs." *Id.* at 7,376. EPA noted that "[u]ntil the tailored regulations are published by the Agency, [cement kiln dust] will retain the Bevill exemption and the status of [cement kiln dust] under RCRA Subtitle C will remain unchanged." *Id.* at 7,366.

## II.

RCRA § 7006(a), authorizing judicial review of certain EPA actions, provides, in relevant part:

Any judicial review of final regulations promulgated pursuant to this chapter and the Administrator's denial of any petition for the promulgation, amendment, or repeal of any regulation under this chapter shall be in accordance with sections 701 through 706 of Title 5, except that—

(1) a petition for review of action of the Administrator in promulgating any regulation, or requirement under this chapter or denying any petition for the promulgation, amendment or repeal of any regulation under this chapter may be filed only in the United States Court of Appeals for the District of Columbia....

(2) in any judicial proceeding brought under this section in which review is sought of a determination under this chapter required to be made on the record after notice and opportunity for hearing, if any

---

**3.** Section 3001(b)(3)(A) provides:

[E]ach waste listed below shall ... be subject only to regulation under other applicable provisions of Federal or State law in lieu of this subchapter until at least six months after the date of submission of the applicable study required to be conducted ... and after promulgation of regulations[:] ... (iii) [c]ement kiln dust waste.

42 U.S.C. § 6921(b)(3)(A).

**4.** Section 3001(b)(3)(C) provides, in relevant part:

[T]he Administrator shall, after public hearings and opportunity for comment, either determine to promulgate regulations under this subchapter for each waste listed ... or determine that such regulations are unwarranted. The Administrator shall publish his determination, which shall be based on information developed or accumulated pursuant to such study, public hearings, and comment, in the Federal Register accompanied by an explanation and justification of the reasons for it.

42 U.S.C. § 6921(b)(3)(C).

party seeking review under this chapter applies to the court for leave to adduce additional evidence, and shows to the satisfaction of the court that the information is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Administrator, the court may order such additional evidence ... to be taken before the Administrator....

42 U.S.C. § 6976(a) (1995). The reference to Title 5 is to the judicial review provision of the Administrative Procedure Act ("APA"), which provides, in relevant part, that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (1996).

By its plain terms, RCRA § 7006(a)(1) provides for review by this court of only three types of EPA actions: the promulgation of final regulations, the promulgation of requirements, and the denial of petitions for the promulgation, amendment or repeal of RCRA regulations.[5] Unlike the judicial review provisions for other environmental statutes, namely the Clean Air Act, see 42 U.S.C. § 7607(b)(1),[6] and the Clean Water Act, see 33 U.S.C. § 1369(b)(1),[7] RCRA does not explicitly provide for review of EPA determinations in a Circuit Court of Appeals. Because Congress clearly knows how to provide this court with jurisdiction over "determinations" when it so intends, our analysis might conclude here were it not for the fact that on two prior occasions this court has reached the merits of petitions challenging regulatory determinations pursuant to the Bevill Amendment. *Natural Resources Defense Council v. EPA,* 25 F.3d 1063, 1065 (D.C.Cir.1994) (upholding EPA's determination not to list used oil as a hazardous waste under RCRA Subtitle C); *Environmental*

*Defense Fund v. EPA,* 852 F.2d 1309, 1312 (D.C.Cir.1988) (denying petitions challenging EPA's "regulatory determination" to extend the Bevill exemption to certain mining wastes and to propose future regulations for those wastes under Subtitle D of RCRA). Although neither opinion addressed this court's jurisdiction, the court has recognized that "[i]t is axiomatic in our federal jurisprudence that inferior courts, including ... this Court, have only that jurisdiction afforded to them by Congress." *Antolok v. United States,* 873 F.2d 369, 373 (D.C.Cir.1989). Therefore, belatedly, we confront the issue now.

Upon so doing we conclude that petitioners' contentions reenforce the conclusion mandated by the plain language of § 7006(a). The plain language indicates that Congress intended for this court to have original jurisdiction to review three specific types of agency action; although Congress used the term "determination" in the jurisdictional passage of § 7006(a)(2) and has expressly given the court original jurisdiction over "determinations" in other statutes, it did not give the court jurisdiction to review "determinations" in this context. In mandating that the agency take the action challenged here, Congress described the action as a "determination." 42 U.S.C. § 6921(b)(3)(C). Moreover, the text of the Bevill Amendment juxtaposes the terms "determin[ation]" and "regulation[ ]," *id.,* signifying that, consistent with the principle that effect must be given to each word of a statute, the two terms were intended to have distinct meanings. *See Commercial Union Ins. Co. v. United States,* 999 F.2d 581, 587 (D.C.Cir.1993); Norman J. Singer, Sutherland Statutory Construction § 46.06, at 119 (5th ed.1992). On the strength of these facts, it seems clear the Congress has declined to give this court orig-

---

5. Neither Safe Cement nor EPA contend that the Regulatory Determination is a "requirement" under § 7006, and we find no basis on which to conclude that it is.

6. The Clean Air Act provides for review in this court of standards and regulations issued under the Act, and over "any determination under section 7521(b)(5)," involving waivers of carbon monoxide standards. 42 U.S.C. § 7607(b)(1).

7. The Clean Water Act provides for judicial review in any Circuit Court of Appeals of certain EPA actions, including those "in promulgating any standard of performance ... making any determination pursuant to section 1316(b)(1)(C) of this title ... [and] making any determination as to a State permit program submitted under section 1342(b) of this title." 33 U.S.C. § 1369(b)(1).

inal jurisdiction over such determinations. That the court has taken jurisdiction in the past does not affect the analysis because jurisdictional issues that were assumed but never expressly decided in prior opinions do not thereby become precedents. *See, e.g., Brecht v. Abrahamson,* 507 U.S. 619, 631, 113 S.Ct. 1710, 1718, 123 L.Ed.2d 353 (1993); *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 279, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); *Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925). In the remaining discussion we thus are concerned only with whether the apparent conclusion to be drawn from the plain language of § 7006(a) is improper because, despite Congress' distinction between "regulations" and "determinations," this agency action is of the sort over which Congress meant to give the court original jurisdiction when it used the term "regulation" in the jurisdictional portion of the statute. Contentions regarding, for example, the agency's characterization of its action, publication, and the action's binding effect, are relevant only to the question of whether Congress' intent in using the word "regulation" was to give the court jurisdiction over such actions, that is, whether Congress' intent conflicts with its use of the terms "regulation" and "determination" in this context.

In examining whether agency actions are subject to judicial review, the court has looked to a variety of criteria, including the agency's own characterization of its action, publication or lack thereof in the Federal Register or the Code of Federal Regulations, and whether the action has a binding effect on the rights of parties, and on the agency's ability to exercise discretion in the future. An agency's characterization of an administrative action, though not dispositive of reviewability, may provide guidance as to whether a pronouncement is a regulation. *Telecommunications Research and Action Center v. FCC,* 800 F.2d 1181, 1186 (D.C.Cir. 1986). Here, EPA labeled its action a "determination" rather than a regulation, and stated that no regulatory flexibility analysis was required to accompany the announcement "[b]ecause in today's regulatory determination EPA does not establish new regulatory controls...." 60 Fed.Reg. at 7,377.

The court has also recognized that "[t]he real dividing point between regulations and general statements of policy is publication in the Code of Federal Regulations...." *Brock v. Cathedral Bluffs Shale Oil Co.,* 796 F.2d 533, 539 (D.C.Cir.1986). Publication in the Code is not just a matter of agency convention. The regulations governing the Code provide that it shall contain "each Federal regulation of general applicability and legal effect." 1 C.F.R. § 8.1(a) (1996). *See Brock,* 796 F.2d at 539. EPA has not published its Regulatory Determination on cement kiln dust in the Code.

A third and sometimes less clear-cut criterion used by the court to ascertain the reviewability of agency pronouncements is whether action will have binding effects on interested parties and the agency. *McLouth Steel Products Corp. v. Thomas,* 838 F.2d 1317 (D.C.Cir.1988). Under the APA, a rule is defined as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy...." 5 U.S.C. § 551(4). The APA also recognizes that agency rulemaking can occur in stages, and that review of initial steps should generally be deferred until the regulatory process is complete. *See* 5 U.S.C. § 704 ("[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.").

Safe Cement contends that although EPA did not designate its Regulatory Determination as a final regulation nor publish it in the Code, the Determination is binding in certain respects, and its impact is thus identical to that of EPA actions that are reviewable under RCRA § 7006(a)(1). Safe Cement directs its challenge to the Regulatory Determination not to EPA's intention to enact tailored standards for cement kiln dust, but rather to EPA's decision to reject full regulation under RCRA Subtitle C, with the result that the Bevill Amendment exemption will remain in place until the tailored standards are promulgated. Safe Cement maintains that EPA's decision that cement kiln dust "does not warrant identification and regula-

tion as a hazardous waste under the 'cradle-to-grave' regulatory scheme of RCRA Subtitle C" is an "unequivocal statement" with specific future effects on "law and policy" with respect to cement kiln dust.

■ But contrary to Safe Cement's contention that the Regulatory Determination sets binding law and policy, EPA's stated intent is to defer law and policymaking with respect to cement kiln dust until the formulation of the tailored standards. 60 Fed.Reg. at 7,366. An announcement of an agency's intent to establish law and policy in future is not the equivalent of the actual promulgation of a final regulation. *See Public Citizen, Inc. v. U.S. Nuclear Regulatory Comm'n,* 940 F.2d 679, 682–83 (D.C.Cir.1991). EPA describes in detail the areas that will require further analysis before final regulations can be promulgated, signaling that the Regulatory Determination was not intended as the last word on the subject of cement kiln dust regulation. *See* 60 Fed.Reg. at 7,375–76. *See also Ass'n of American Railroads v. ICC,* 846 F.2d 1465, 1469 (D.C.Cir.1988).

■ Moreover, EPA acknowledged in the Regulatory Determination that various components of Subtitle C waste regulation will ultimately be incorporated into the tailored kiln dust standards, and stated that the Regulatory Determination did not "definitively limit[ ] the scope" of the kiln dust regulatory program. 60 Fed.Reg. at 7,376. Hence, although EPA rejected full Subtitle C regulation, it stated that the Regulatory Determination was not intended to fetter its discretion in formulating a tailored regulatory regime. *See Kennecott Utah Copper Corp. v. Dep't of Interior,* 88 F.3d 1191, 1223 (D.C.Cir.1996). Until the tailored regulations for cement kiln dust are promulgated, neither the court nor Safe Cement can evaluate whether, as Safe Cement suggests, EPA's regulatory regime will result in "substantial harm," or whether, instead, the regime will provide sufficient protection for health and safety as required by RCRA. *See State v. FERC,* 980 F.2d 761, 764 (D.C.Cir.1992); *Western Union Int'l, Inc. v. FCC,* 652 F.2d 136, 144 (D.C.Cir.1980). Finally, although the unpredictability associated with judicial review of preliminary agen-

cy action often relates more to ripeness than to jurisdiction, these considerations have been held relevant to determinations of whether an action is reviewable under the APA. *See* 5 U.S.C. § 704. Where, as here, a proposed regulation is still in "flux," review is "premature," and this court has no jurisdiction under the APA. *See Action on Smoking and Health v. Dep't of Labor,* 28 F.3d 162, 164–65 (D.C.Cir.1994).

Safe Cement also maintains that because Congress instructed EPA in RCRA § 3001(b)(3)(C) to use a "rulemaking-type" process to reach the Regulatory Determination on cement kiln dust, judicial review is appropriate. Yet, "the ultimate availability of substantive judicial review is distinct from the question of whether the basic rulemaking strictures of notice and comment and reasoned explanation apply." *Am. Medical Ass'n v. Reno,* 57 F.3d 1129, 1134 (D.C.Cir.1995). Section 3001(b)(3)(C) provides that the product of the notice and comment process will be a determination of whether regulation is warranted in the future, not regulations themselves. While Congress established a timetable for EPA's Regulatory Determination, it set no deadline for the promulgation of regulations that EPA might find necessary under § 3001(b)(3)(C). Accordingly, the notice and comment proceedings were aimed at informing EPA's decision at an intermediate rather than ultimate stage in the rulemaking process.

EPA, joining Safe Cement in contending that the court has jurisdiction, makes four arguments, three based on the language of § 7006(a)(1), one based on pragmatic concerns. None is persuasive.

First, EPA contends that the determination that cement kiln dust "warrants some form of Subtitle C regulation is a binding regulation." EPA, however, acknowledges that it has "not made any final or binding decision regarding the scope or content of the tailored Subtitle C regulations ...". EPA identifies only one portion of the Regulatory Determination that it considers binding, namely, "the determination that *some* regulation under Subtitle C is warranted is binding upon the Agency." This portion of

the Regulatory Determination, the decision to promulgate tailored regulations in the future, is contested by American Portland, but is not the subject of Safe Cement's petition. EPA does not maintain that the portion of the Regulatory Determination challenged by Safe Cement, namely its decision not to impose full Subtitle C regulations on cement kiln dust, will limit EPA's discretion during the tailored standard-setting process. Elsewhere in its brief, EPA maintains that the one portion of its Regulatory Determination that is binding—its decision to promulgate tailored regulations in the future—does not present an issue ripe for review. Accordingly, EPA's contention that the binding nature of the Regulatory Determination makes jurisdiction proper only applies to a portion of the Determination that EPA concedes is presently unreviewable. In any event, EPA's effort to divide the Regulatory Determination into portions fails because EPA's "determination" retained such broad flexibility that EPA has not bound itself in any significant way by making it. EPA simply declared that the tailored regulations it will promulgate will be less than "full" Subtitle C regulation and more than no Subtitle C regulation at all. All it has actually decided is that the general framework attached to Subtitle C regulations will be relevant to the regulations it eventually will promulgate. Strictly speaking, its discretion is contained at both ends of the spectrum, insofar as it cannot decide to subject cement kiln dust to "full" subtitle C regulation, nor to "zero" Subtitle C regulation; but aside from these excluded points, the field is wide open.

■ Second, EPA contends that because the Regulatory Determination extends the Bevill Amendment exemption for cement kiln dust until after the tailored standards are promulgated, EPA's action was equivalent to reopening the exemption "for comment and for judicial review." We are unpersuaded. EPA has pointed to nothing in the notices preceding the Regulatory Determination or in the Regulatory Determination itself indicating that the agency construed its action as reopening the exemption for cement kiln dust. See 40 C.F.R. § 261.4(b)(8). Consequently, EPA's characterization of the Regulatory Determination amounts to little more

than a *post hoc* effort to recast its earlier action to fall within the scope of RCRA § 7006(a)(1). Just as judicial review of agency action must be based on the administrative record rather than *post hoc* rationales proffered during litigation, a determination of reviewability must be predicated on the nature of an agency action when undertaken, not on the agency's characterization after the fact. *See Consumer Fed'n and Public Citizen v. Dep't. of Health & Human Serv.*, 83 F.3d 1497, 1499 (D.C.Cir.1996).

Furthermore, the continuing application of the Bevill exclusion was mandated by Congress in RCRA § 3001(b)(3)(A), which provides that the exemption will remain in place until "after promulgation of regulations in accordance with subparagraph (C) of this chapter." 42 U.S.C. § 6921(b)(3)(A). Upon promulgation of the regulation exempting cement kiln dust from RCRA, *see* 40 C.F.R. § 261.4(b)(8), EPA acknowledged that it was merely "put[ting] in regulatory form what is already stated in statute." 45 Fed.Reg. 76,-618, 76,619 (Nov. 19, 1980). Given Congress' directive that the Bevill Amendment exemption remain in effect until EPA promulgates regulations under § 3001(b)(3)(C), the Regulatory Determination, which states EPA's intention to issue future regulations, does not mark the end of the exemption period. While the Regulatory Determination refers to the continuation of the Bevill exemption, it is the Bevill Amendment itself, not EPA's Regulatory Determination, which mandates that the Bevill exemption remain in place. Because Congress is presumed to have known that RCRA § 7006(a)(1) provides for judicial review of "regulations," but not of "determinations," the language of § 3001(b)(3)(A) indicates that Congress anticipated judicial review in this court when EPA promulgates its final regulations, not before. *Cf. Cannon v. Univ. of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979).

■ Third, EPA attempts to place its Regulatory Determination within the scope of § 7006(a)(1), which extends judicial review to denials of petitions. Although conceding that its Regulatory Determination was not

issued in response to a petition, EPA contends that because Safe Cement urged EPA to impose full Subtitle C regulations on cement kiln dust, the effect of the Regulatory Determination was equivalent to a denial of a petition to amend or repeal the regulation. *See* 40 C.F.R. § 261.4(b)(8). In other words, EPA would have the court amend § 7006(a)(1) to provide for judicial review of actions akin to denials of petitions. The court has no such authority. *See AT&T v. FCC,* 602 F.2d 401, 409 (D.C.Cir.1979). In urging the court to give a "practical rather than a cramped" construction to RCRA's judicial review provision, EPA's reliance on *Natural Resources Defense Council v. EPA,* 673 F.2d 400, 405 (D.C.Cir.), *cert. denied,* 459 U.S. 879, 103 S.Ct. 175, 74 L.Ed.2d 143 (1982), is misplaced. The issue in that case was whether challenges to permit regulations issued under the Clean Water Act were reviewable in the district courts or the courts of appeals, and nowhere did the court suggest that a "practical" construction of a judicial review statute could override congressional intent to defer review until the completion of a regulatory process. *See id.* at 402, 405–06.

Finally, EPA points to practical concerns arising from a bifurcated approach to review. EPA hypothesizes that if this court lacks jurisdiction to review petitions challenging the Regulatory Determination, then the challenges may be brought in district courts throughout the country, creating duplicative litigation and potentially inconsistent results. This court's consideration of the challenges based on the administrative record is more appropriate, in EPA's view, than a district court making original findings of fact. Relying in language in *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 745, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985), in which the Supreme Court stated that "[a]bsent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals," EPA fails to consider that this observation arose in the context of discussing § 2239 of the Hobbs Act, 42 U.S.C. § 2239(a)(1), a provision the court concluded was "ambiguous on its face." 470 U.S. at 737, 105 S.Ct. at 1603. Here, by contrast, the provisions of RCRA § 7006(a), coupled with the requirement of the Bevill Amendment, RCRA § 3001(b)(3)(C), that EPA issue a determination and, if necessary, subsequent regulations, makes clear that Congress intended review of the cement kiln dust regulations by this court to occur only after the final regulations are promulgated.

Accordingly, because the Regulatory Determination is not an action judicially reviewable under § 7006(a)(1), we dismiss the petitions.