**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED FARM WORKERS OF
AMERICA, AFL-CIO; SEA MAR
COMMUNITY HEALTH CENTER;
PINEROS Y CAMPESINOS UNIDOS DEL
NOROESTE; BEYOND PESTICIDES;
FRENTE INDIGENA OAXAQUENO
BINACIONAL; ARNULFO LOPEZ,
        *Plaintiffs-Appellants,*

        v.

ADMINISTRATOR, ENVIRONMENTAL
PROTECTION AGENCY,
        *Defendant-Appellee,*

        and

GOWAN COMPANY,
   *Defendant-intervenor-Appellee,*

BAYER CROPSCIENCE LP;
MAKHTESHIM AGAN OF NORTH
AMERICA INC,
        *Intervenors-Appellees.*

No. 08-35528

D.C. No.
2:04-cv-00099-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
August 7, 2009—Seattle, Washington

Filed January 26, 2010

Before: Harry Pregerson, John T. Noonan and Carlos T. Bea,
Circuit Judges.

1491

Opinion by Judge Noonan;
Dissent by Judge Pregerson

## COUNSEL

Kristen L. Boyles, Seattle, Washington, for the appellant.

Ronald J. Tenpas, Washington, D.C., for the appellee.

Beth S. Ginsberg, Seattle, Washington, for the intervenor-appellee Gowan Co.

B. Weinberg, Washington, D.C., for the intervenor-appellee Makhteshim Agan of North America, Inc.

**OPINION**

NOONAN, Circuit Judge:

A single issue is presented by this case: Was an appeal from a decision of the Environmental Protection Agency (the EPA) filed in the right court? In the background are the merits of the litigation centered on the continued use of the pesticide Azinphos-Methyl (AZM). Our task is not to decide the merits but to ascertain the appeals process established by Congress. We hold that the choice of the district court by United Farm Workers of America and the other appellants (collectively Farm Workers) was mistaken and that the district court correctly dismissed their suit for lack of jurisdiction.

## PROCEEDINGS

In 2001, EPA issued an Interim Registration Eligibility Decision governing the use of AZM under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.* The EPA's decision responded to data furnished by the manufacturers of AZM and to written comments from growers, environmental groups, and the Farm Workers. The EPA's decision prohibited some uses of AZM and provided for phasing out other uses.

In 2004, the Farm Workers challenged in federal district court the EPA's Interim Decision. The case was provisionally settled by an agreement to stay proceedings until the agency completed its evaluation of the pesticide.

In 2006, the EPA issued its final decision, again permitting for a period some uses of AZM. This decision, too, reflected extensive input from the manufacturers, the growers, the environmental groups, and the Farm Workers. On April 27, 2007, the Farm Workers amended their 2004 complaint to challenge the final decision.

The manufacturers intervened in the district court and moved to dismiss for lack of jurisdiction. The EPA did not join the motion. On May 10, 2008, the district court granted the motion. This appeal followed.

## ANALYSIS

**[1]** *Jurisdiction in the district court.* Section 16(a) of FIFRA provides jurisdiction in the district court in these terms:

> (a) *District court review.* Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewed by the district courts of the United States. 7 U.S.C. § 136n(a).

**[2]** The cardinal condition for district court jurisdiction is that the Administrator of the EPA has made a decision "not following a hearing." If a hearing has been held, no jurisdiction exists in the district court. Was there a hearing?[1]

**[3]** "Hearing" is a familiar term in the legal process. It identifies elements essential in any fair proceeding — notice be given of a decision to be made and presentation to the decisionmaker of the positions of those to be affected by the decision. By itself, the term does not connote more. "Hearing" is no doubt metaphorical, and a "hearing" includes proceedings

---

[1]The district court did not gain jurisdiction over this case in 2004 when the government settled the case contingent on the EPA's final determination of termination of AZM. The parties cannot confer jurisdiction on the district court under section 16(a) if there was a hearing under FIFRA, and the appeal of the EPA ruling should have been made to the Ninth Circuit, as discussed below.

in which there is no presentation of public argument.[2] A judge who reads a brief "hears" the case. An administrator who reads comments "hears" what they say. The plain meaning of "hearing" is satisfied by the process the EPA provided the manufacturers, the growers, the environmental groups, and the Farm Workers. To conclude that there was "no hearing" would fly in the face of the process. Jurisdiction, therefore, does not lie in the district court.

[4] *Jurisdiction in the court of appeals*. Section 16(b) of FIFRA reads:

> (b) *Review by court of appeals*. In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business, within 60 days after the entry of such order, a petition praying that the order be set aside in whole or in part . . . . Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part. The court shall consider all evidence of record. The order of the Administrator shall be sustained if it is supported by substantial evidence when considered on the record as a whole. 7 U.S.C. § 136n(b).

Jurisdiction in the Court of Appeals is conferred after an order is issued by the EPA "following a public hearing." Does the addition of "public" alter the meaning of "hearing"? It

---

[2]This court decides literally thousands of cases each year where there is no oral argument; for example, Oral Screening Panel cases. Even when a case is before a merits panel, the panel often submits the case on the briefs without public oral presentation of arguments.

seems unlikely. If it did, there would be actions by the Administrator following "a hearing" for which no review was provided. "Hearing" and "public hearing" should be read in tandem. Context does determine that "the hearing" contain written submissions; otherwise, judicial review would be awkward.

[5] On this construction, review of the contested decision in this case should have been sought in this court. Unfortunately for the appellants it is now too late to seek it here. Petitions for review must be filed 60 days afer the decision. *Id*. The time is past.

*Case Law*.

[6] The bellwether case addressing appellate court jurisdiction over administrative law decisions has rejected the argument advanced by Farm Workers that the procedures set out in FIFRA under the heading "Public hearings and scientific review," 7 U.S.C. § 136d(d), supply the meaning of "public hearing" in Section 16(b) of the act. *Envtl. Def. Fund v. Costle*, 631 F.2d 922, 927-32 (D.C. Cir. 1980). Despite the fact that Section 16(b) refers to "party to the proceedings" and those "adversely affected," the *Costle* court refused to restrict "public hearing" to a quasi-judicial mode. *See id*. at 927-28. The court noted that, with an adequate record made in the administrative proceedings, it was "a waste of time and effort" to channel review to a district court, from which appeal would then go to the circuit. *Id*. at 932. The kind of order appealable to the circuit court is disputed by Farm Workers. *Costle* settled the question by holding that if an order followed a public hearing, it was "the type of order Congress intended appellate courts to review." *Id.* at 926.

In 1989, this court followed *Costle*, stating:

We conclude that 136n(b)'s public hearing requirement is satisfied when the EPA conducts proceed-

ings in which interested parties are afforded an opportunity to present their positions by written briefs and a sufficient record is produced to allow judicial review. *Nw. Food Processors v. Reilly*, 886 F.2d 1075, 1087 (9th Cir. 1989) *(citing Costle)*.

*Food Processors* addressed a cancellation order by the EPA. But Section 16(b) provides the same process for "any order," so *Food Processors* is controlling precedent on a registration, too. In *Food Processors* we also cited with approval another D.C. Circuit case where there was a challenge to the EPA's grant of an experimental use permit, which grant was held to be reviewable in a court of appeals. *Humane Soc'y of the United States v. EPA*, 790 F.2d 106 (D.C. Cir. 1986), *cited in Food Processors*, 886 F.2d at 1077-78. Notices and written comments were held to establish an adequate record for review. *Id.* at 110-112.

**[7]** Unsurprisingly, governing precedent confirms our reading of the statutory language. We add as final confirmation the wise words of Justice Brennan resolving a vexing statutory puzzle: "Absent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeal." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 745 (1985).

Accordingly, the judgment of the district court is AFFIRMED.

---

PREGERSON, Circuit Judge, dissenting:

In this case, the EPA used a cost-benefit analysis to allow the continued use of a highly toxic chemical, AZM. The adverse effects of AZM on people exposed to AZM, such as

agricultural workers, include "headache, nausea, and dizziness. Anxiety and restlessness are also prominent. Worsening may result in twitching, weakness, tremor, incoordination, vomiting, abdominal cramps, diarrhea. Often prominent are sweating, salivation, tearing, and rhinorrhea." In 2006, after receiving written comments from the public ("notice and comment"), the EPA issued an order that permitted growers to continue spraying of AZM on certain crops until 2012, after which the use of AZM would be "phased out."

In short, without hearing any witness testimony or reviewing anything other than the submission of written comments,[1] the EPA struck the cost-benefit analysis in *favor* of the AZM manufacturers and the growers who use AZM and *against* the agricultural workers and the environment. Because AZM's toxic effects endanger the health of agricultural workers, the plaintiff-appellants, United Farm Workers of America ("Farm Workers")[2] opposed the continued use of AZM and challenged the EPA's order in federal district court.

To resolve this case we are required to interpret the words "public hearing" under Section 16(b) of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.* Under § 16(b), whether the Farm Workers should have filed for review in federal district court or in the federal court of appeals depends on whether the EPA's notice and comment procedure amounted to a "public hearing." 7 U.S.C. § 136n(b). Simply put, if there was a public hearing, the Farm Workers would have been correct to file in the court of appeals. 7 U.S.C. § 136n(b). If there was *not* a public hear-

---

[1] The EPA did conduct "meetings" with "stakeholders" in Michigan, California, Oregon, and Washington, which are areas of high AZM use, which were considered in addition to the written comments. Transcripts of these "meetings" are not part of the record.

[2] Other groups are joined as plaintiffs, including: Sea Mar Community Health Center, Pineros y Campesinos Unidos Del Noreste, Beyond Pesticides, Frente Indegena de Organizaciones Binacionales, and Arnulfo Lopez.

ing, the Farm Workers were correct to file in district court. 7 U.S.C. § 136n(a)-(b).

The Farm Workers sought review in the district court. They correctly determined that the court of appeals lacked jurisdiction to hear their challenge to the EPA's order because the only evidentiary material presented to the EPA was in the form of written comments. The Farm Workers correctly concluded that this limited process did not constitute a public hearing. Unfortunately for the Farm Workers, the district court granted the defendant-appellee-intervenors'[3] (the AZM manufacturers) motion to dismiss for lack of jurisdiction.[4] The district court held that the court of appeals was the appropriate forum for the Farm Workers' challenge to the EPA's order because the EPA's notice and comment procedure constituted a "public hearing." The majority would affirm the district court's ruling that the EPA's solicitation of written comments from the public is a "public hearing" under § 16(b) and that the Farm Workers should have filed their challenge to the EPA's order in the court of appeals. Maj. Op. at 1496.[5] I disagree.

## DISCUSSION

### I.   The Words "Public Hearing" in Section 16(b) Refer to a Quasi-Judicial Process, not Mere Solicitation of Written Comments from the Public

Section 16(b) of FIFRA does not define the phrase "public

---

[3]Defendant-intervenor-appellees are: Gowan Company, Makhteshim Agan of North America, Inc., and Bayer Cropscience LP. These three companies manufacture AZM.

[4]It is worth noting that the EPA did not join in the AZM manufacturers' motion to dismiss for lack of jurisdiction.

[5]The majority further holds that the Farm Workers can no longer seek review in our court because the 60 day time limit for filing their petition has expired. Maj. Op. at 1497 (citing 7 U.S.C. § 136n(b)).

hearing." An examination of (1) the remaining language in § 16(b); (2) other sections of FIFRA; and (3) case law interpreting § 16(b), however, leads to the inexorable conclusion that a "public hearing" requires some sort of quasi-judicial process at the agency level. In the absence of other procedures, solicitation of written comments from the public will not suffice as a "public hearing."

### A. Section 16(b)'s Reference to a "Party to the Proceedings" Indicates that a Public Hearing is a Quasi-Judicial Process

FIFRA § 16(b) allows a "person who will be adversely affected by [an EPA] order and who had been *a party to the proceedings*" to challenge in the court of appeals "any order issued by the [EPA] Administrator following a *public hearing*." 7 U.S.C. § 136n(b) (emphasis added).[6]

The phrase "a party to the proceedings" clearly contemplates a quasi-judicial proceeding at the agency level, not the agency's solicitation of written comments from the public. If solicitation of written comments from the public satisfied § 16(b)'s "public hearing" requirement, as the majority concludes, then the "part[ies] to the proceedings" before the EPA would be difficult to identify. Would every member of the public who submitted a written comment, no matter how long or substantive, be a "party to the proceedings?" Surely that cannot be the case.[7]

---

[6]Challenges to "other final actions of the Administrator" "not following a hearing" must be brought in district court under Section 16(a) of the FIFRA. 7 U.S.C. § 136n(a). Unlike 16(b), Section 16(a) does not require the person challenging the EPA's action to have been a "party to the proceedings" before the EPA. 7 U.S.C. § 136n(a)-(b).

[7]In this case, the EPA received comments from "growers, grower groups, university extension agents, worker and environmental advocacy groups, registrants, and other members of the public." I do not believe that all of these organizations, corporations, and individual members of the public were "parties to the proceedings" before the EPA.

The majority cites *Environmental Defense Fund v. Costle* for the proposition that, despite the fact that § 16(b) refers to a "party to the proceedings," the *Environmental Defense Fund* court refused to restrict the meaning of a "public hearing" to a "quasi-judicial" proceeding. Maj. Op. at 1497 (citing *Envtl. Def. Fund v. Costle*, 631 F.2d 922 (D.C. Cir. 1980)). The majority downplays, however, the role that the extensive record played in the *Environmental Defense Fund* decision. In *Environmental Defense Fund*, unlike in the present case, in addition to written comments, the parties submitted "legal memoranda" and "briefs." *Envtl. Def. Fund,* 631 F.2d at 926. Further, in *Environmental Defense Fund* the record included proceedings before an administrative law judge ("ALJ"). *Id.* at 925.

While the EPA's notice and comment procedure poses special problems in identifying who qualifies as a "party to the proceedings," no such confusion arises when the proceedings at the agency level are quasi-judicial in nature. When the proceedings before the agency involve opposing parties presenting their arguments to an "ALJ," the "parties to the proceedings" are readily determinable.

### B.    FIFRA Section 6(d) suggests that a public hearing is a quasi- judicial process

FIFRA § 6(d) indicates that a "public hearing" is a quasi-judicial process. Section 6(d), entitled "Public hearings and scientific review," describes a fairly extensive adjudicative process allowing for subpoenas and live testimony. 7 U.S.C. § 136d(d). The "public hearing" contemplated in Section 6(d) is to be overseen by a "hearing examiner" whose decisions regarding discovery "shall be guided by the principles of the Federal Rules of Civil Procedure." 7 U.S.C. § 136d(d). Our interpretation of the words "public hearing" in § 16(b) should be shaped by the definition set forth in § 6(d) of the same statute. Thus, a public hearing is more than just notice and com-

ment procedure, but includes oversight by a hearing examiner and the submission of live testimony.

## C.    Notice and comment would be sufficient to constitute a public hearing in the context of a quasi-judicial proceeding

The majority relies on *Northwest Food Processors v. Reilly*, 886 F.2d 1075 (9th Cir. 1989), and *Environmental Defense Fund* to support its proposition that solicitation of comments alone constitutes a "public hearing" under FIFRA § 16(b). Maj. Op. at 1497.[8] Far from supporting the majority's conclusion, these cases demonstrate that a "public hearing" under § 16(b) refers to a quasi-judicial process. Unlike this case, where only written notice and comment proceedings took place, the administrative proceedings in both *Northwest Food Processors* and *Environmental Defense Fund* were quasi-judicial proceedings before an ALJ. *Nw. Food Processors*, 886 F.2d at 1077 (describing agency proceedings before an ALJ); *Envntl. Def. Fund*, 631 F.2d at 925 (describing agency proceedings before a "Chief" ALJ).

The majority also cites *Humane Society of United States v. EPA*, 790 F.2d 106 (D.C. Cir. 1986), to support its conclusion that "notice and comment" constitutes a "public hearing." Maj. Op. at 1498. Reliance on *Humane Society*, however, is also misplaced, as the administrative proceedings in that case

---

[8]The majority correctly notes that the courts in *Environmental Defense Fund* and *Northwest Food Processors* based their decisions on the adequacy of the administrative record. Maj. Op. at 1497. The majority neglects to mention, however, that the courts in *Environmental Defense Fund* and *Northwest Food Processors* examined the adequacy of the administrative record *when the administrative proceedings involved a quasi-judicial process*. *Nw. Food Processors*, 886 F.2d at 1077; *Envntl. Def. Fund*, 631 F.2d at 925. In fact, as the Farm Workers argue, "every published case that discusses FIFRA's jurisdictional provisions under section 16 involved either quasi-judicial proceedings before an administrative law judge or public proceedings with live witness testimony."

involved more than simply "notice and comment." Indeed, in *Humane Society* the administrative proceedings comprised "[w]ell over 20,000 pages in hearing *testimony* and exhibits . . . with dozens of parties actively participating in the proceeding. Over 90 witnesses *testified*." 790 F.2d at 112 n.49 (emphasis added). The *Humane Society* administrative record also included an "adjudicatory hearing" overseen by an ALJ. *Id*. at 109 n.7, 112 n. 46; *see also* 46 Fed. Reg. 59,622 (1981) (notice of "adjudicatory hearing").

The majority concludes by citing *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 745 (1985), for the proposition that absent a "firm indication" to the contrary, we should presume that Congress intends to place the review of administrative decisions under the Administrative Procedure Act in the courts of appeal. That case considered whether the court of appeals could review a petition under 42 U.S.C. § 2239(b) and the Hobbs Act. *See*, *e.g.*, *Lorion*, 470 U.S. at 737-45. *Lorion* did not, however, "intimate that it was ruling as a matter of general administrative procedure." *Nader v. EPA*, 859 F.2d 747, 754 (9th Cir. 1988); *see also Am. Portland Cement Alliance v. EPA*, 101 F.3d 772, 779 (D.C. Cir. 1996). Nothing in *Lorion* discusses or refers to FIFRA, the statute involved in this case.

## CONCLUSION

When Congress chose the phrase "public hearing" in § 16(b) of FIFRA, it intended, as with other administrative proceedings, that where a quasi-judicial "public hearing" took place a matter should be reviewed by the court of appeals where an adequate record already existed and no fact finding remained. Where the factual record is inadequate and where no quasi-judicial "public hearing" has taken place, Congress intended to allocate jurisdiction to the district court for the development of the record. In this case, there has been no public hearing, but only the submission of written comments to the agency. The district court would conduct a public hear-

ing, take the testimony of witnesses, rule on challenges to the evidence submitted, and render a decision based on the court's factual findings and on the applicable law. Accordingly, in this case the district court had jurisdiction.

Further, the text of the FIFRA and prior court decisions interpreting § 16(b) reveal that a "public hearing" refers to a quasi-judicial process, not the mere solicitation of written comments from the public. The Farm Workers were correct, therefore, in seeking review of the EPA's order in the district court.

Moreover, the merits of this case, although not at issue on appeal, warrant close inspection of proper jurisdiction to ensure that the Farm Workers have a forum for their complaints. Here, the Farm Workers sought review of an EPA order allowing for the continued use of a highly toxic pesticide, endangering agricultural workers and the environment.[9] Using a cost-benefit analysis based on the submission of written comments, the EPA determined that the commercial gains in the continued use of AZM outweighed the potential risks to human health and safety and the environment. The majority construes § 16(b) in such a way as to preclude review of this compelling case and that is why I dissent.

---

[9]The EPA's final decision of November 16, 2006, explains that AZM is "very highly toxic to freshwater and marine fish and invertebrate species as well as to birds, mammals, and beneficial insects, such as honey bees" with a "high risk of mortality to numerous aquatic and terrestrial species" when used on apples.