# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 8, 2022        Decided July 21, 2023

No. 20-1441

AMERICAN SOYBEAN ASSOCIATION,
PETITIONER

v.

MICHAEL S. REGAN, ADMINISTRATOR, U.S. ENVIRONMENTAL
PROTECTION AGENCY, ET AL.,
RESPONDENTS

BASF CORPORATION, ET AL.,
INTERVENORS

———

Consolidated with 20-1445, 20-1484, 22-1048, 22-1050,
22-1067

———

On Petitions for Review of Final Actions
of the Environmental Protection Agency

———

*Edmund S. Sauer* argued the cause for petitioners. With
him on the joint briefs were *Kyle W. Robisch*, *Sarah Gunn*, and
*Bartholomew J. Kempf*.

*J. Brett Grosko* and *Andrew D. Knudsen*, Attorneys, U.S. Department of Justice, argued the causes for respondents. With them on the brief was *Todd Kim*, Assistant Attorney General.

*John C. Cruden*, *Kathryn E. Szmuskzkovicz*, *Anthony L. Michaels*, *David A. Barker*, *Philip J. Perry*, *Richard P. Bress*, *Stacey L. VanBelleghem*, *Karen E. Carr*, *Donald C. McLean*, and *Laura Zell* were on the joint brief for intervenors Bayer CropScience LP, et al. in support of respondents. *Andrew D. Prins* entered an appearance.

Before: SRINIVASAN, *Chief Judge*, PILLARD and RAO, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

Concurring opinion filed by *Circuit Judge* RAO.

SRINIVASAN, *Chief Judge*: Under the Federal Insecticide, Fungicide, and Rodenticide Act, review of orders issued by the Environmental Protection Agency after a "public hearing" lies exclusively in the courts of appeals. 7 U.S.C. § 136n(b). For orders issued without a public hearing, review lies in the district courts. *Id.* § 136n(a).

Petitioners in this case seek to challenge EPA orders regulating the use of a pesticide named dicamba. Believing that EPA issued those orders without holding any "public hearing," petitioners brought their challenges in district court. But as a precautionary measure, they also filed protective petitions for review in our court. All parties before us agree that review properly lies in district court rather than our court because EPA did not hold a "public hearing" before issuing the challenged orders. We agree as well, and we therefore dismiss the petitions for lack of jurisdiction.

3

I.

The Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) generally precludes the distribution or sale of any pesticide unless it is "registered" by EPA. *Id.* § 136a(a). A FIFRA registration is a license establishing the terms and conditions under which a pesticide may be lawfully sold, distributed, and used. *Id.* § 136a(c)(1)(A)–(F).

Parties seeking registration of a pesticide must submit specific information to EPA, including supporting data and proposed labeling. *Id.* § 136a(c)(1); 40 C.F.R. § 152.50. If a party applies to register a pesticide containing any new active ingredient or if the party's application would entail a changed use pattern for a pesticide, EPA must publish its receipt of the application in the Federal Register and provide a public comment period. 7 U.S.C. § 136a(c)(4). But if an application does not involve a pesticide with a new active ingredient and does not request a changed use pattern, EPA is not required to provide public notice of the application. *See id.*

EPA must register a pesticide if it meets certain criteria under FIFRA, including that use of the pesticide as the label directs "will not generally cause unreasonable adverse effects on the environment." *Id.* § 136a(c)(5). EPA refers to that form of registration as "unconditional registration." A "conditional registration," on the other hand, occurs when EPA conditionally registers new uses of an already-registered pesticide "notwithstanding that data concerning the pesticide may be insufficient to support an unconditional amendment." *Id.* § 136a(c)(7)(B).

FIFRA provides for judicial review of EPA registration orders through two routes. When EPA issues an order in response to a registration application "following a public

4

hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business . . . ." *Id.* § 136n(b). In that situation, the court of appeals "shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part." *Id.* For orders that do not follow a "public hearing," FIFRA provides that the orders are instead initially "reviewable by the district courts of the United States." *Id.* § 136n(a).

## II.

### A.

Dicamba is an herbicide used to control broadleaf weeds in crops. Dicamba has been registered under FIFRA since 1967, but its use was initially restricted to application to soil before crops emerge. In 2015, the Department of Agriculture authorized the commercial sale of soybean seeds and cotton seeds that are genetically modified to be tolerant of dicamba. Businesses then introduced dicamba-based products intended for use on dicamba-tolerant crops. Those products can be applied "over the top" of soybean and cotton crops, allowing farmers to target broadleaf weeds after crops have emerged from the soil.

EPA later received an application to register three dicamba products for over-the-top use. Because that use of dicamba entailed a changed use pattern for the pesticide, EPA, per FIFRA's requirements, published notice of its receipt of the application in the Federal Register and provided a public comment period. *See id.* § 136a(c)(4)**.** After the public comment period, EPA provided notice of its proposed

registration decision and solicited an additional round of comments.

In 2016, EPA issued conditional registrations permitting over-the-top use of dicamba on dicamba-tolerant soybean and cotton crops (the "2016 Registrations"). The 2016 Registrations included several use restrictions to prevent adverse effects to the environment, such as a prohibition on using the approved dicamba products during periods of high wind speeds to prevent dicamba from spreading to non-target crops and wildlife. *See Nat'l Fam. Farm Coal. v. EPA*, 960 F.3d 1120, 1127 (9th Cir. 2020). EPA set a 2018 expiration date for the 2016 Registrations.

In 2018, EPA granted applications to renew the 2016 conditional registrations for an additional two years (the "2018 Registrations"). Because the application did not concern a pesticide with a new active ingredient or propose a new use pattern, EPA did not publish notice of that application or solicit public comment on it.

Several parties filed petitions for review of the 2018 Registrations in the Ninth Circuit. *See Nat'l Fam. Farm Coal.*, 960 F.3d at 1120. The court held that the 2018 Registrations followed a "public hearing" for purposes of substantiating its jurisdiction. *Id.* at 1132. Even though there had been no public notice or solicitation of comments specifically concerning the renewal applications giving rise to the 2018 Registrations, the court reasoned that those registrations followed a "public hearing" because there had been a notice-and-comment period before the underlying 2016 Registrations. *Id.*.

On the merits, the court vacated the 2018 Registrations, concluding that substantial evidence did not support EPA's grant of the registrations. *Id.* at 1145. In the wake of the Ninth

Circuit's decision, EPA issued an order cancelling the 2018 Registrations.

B.

In 2020, EPA received registration applications for over-the-top use of two dicamba products whose previous approvals in the 2016 Registrations had been vacated by the Ninth Circuit's decision in *National Family Farm Coalition*. The agency also received an application to amend and extend a 2019 registration of a separate dicamba product. That 2019 registration was not at issue in *National Family Farm Coalition*.

In October 2020, EPA granted the applications, authorizing all three dicamba products for over-the-top use (the "2020 Registrations"). Because the applications again did not involve a new active ingredient or changed use pattern, EPA did not publish notice of the applications in the Federal Register or provide an opportunity to submit comments to the agency. EPA nonetheless received over 120 unsolicited comments from stakeholders. The stakeholders submitting unsolicited letters to EPA included the petitioners in this case: the American Soybean Association and Plains Cotton Growers, Inc. (the "Growers"), organizations who represent farmers that grow soybean and cotton, respectively. The companies that produce the three dicamba products—Bayer CropScience LP, BASF Corporation, and Syngenta Crop Protection, LLC, all of whom have intervened in this case—also submitted comments.

The 2020 Registrations, unlike EPA's previous registrations of dicamba products, unconditionally registered the approved dicamba products, even as it retained many of the mitigation measures included in the 2018 Registrations. Later, in 2022, EPA amended the 2020 Registrations to further restrict

the use of dicamba products in Iowa and Minnesota in response to reports alleging adverse effects from dicamba use in those states (the "2022 Amendments"). Like the 2020 Registrations, the 2022 Amendments were not preceded by public notice or solicitation of comments from the public.

## C.

The Growers filed an action challenging the 2020 Registrations in district court. Complaint for Declaratory & Injunctive Relief, *Am. Soybean Ass'n v. EPA*, No. 1:20-cv-03190-RCL (D.D.C. Nov. 4, 2020). In the event jurisdiction over those challenges properly lies in the courts of appeals rather than district court, the Growers also filed protective petitions for review in our court and the Fifth Circuit. The latter petitions have been consolidated in our court. We have since granted the Growers' motion to amend the petitions pending before us to include challenges to the 2022 Amendments. (The district court has stayed the Growers' action before it pending our disposition of these petitions. Order, *Am. Soybean Ass'n*, No. 1:20-cv-03190-RCL (D.D.C. Sept. 3, 2021), ECF No. 72.)

## III.

All parties agree that our court lacks jurisdiction over the protective petitions for review because the challenged orders did not follow a "public hearing." 7 U.S.C. § 136n(b). We agree with the parties: EPA did not provide public notice before issuing the challenged registrations, and public notice in these circumstances is an essential precondition to agency proceedings being considered a "public hearing." Jurisdiction thus properly lies in district court. *Id.* § 136n(a).

FIFRA makes direct court of appeals review available for an EPA order issued "following a public hearing," provided

that the action is brought by a party "who will be adversely affected by such order and who had been a party to the proceedings" before EPA. *Id.* § 136n(b). For a proceeding to be considered a "public hearing" in which anyone "adversely affected by [a resulting] order" can become "a party to the proceedings," the agency must at least provide notice of its proposed action to the public. Without public notice of the pending action, the agency's consideration of it cannot be considered a "public" hearing—i.e., a proceeding "[o]pen or available for all" who might wish to participate. *Public*, *Black's Law Dictionary* (11th ed. 2019); *see also United Farm Workers of Am., AFL-CIO v. Adm'r, EPA*, 592 F.3d 1080, 1082 (9th Cir. 2010) ("'Hearing' is a familiar term in the legal process. It identifies elements essential in any fair proceeding—notice be given of a decision to be made and presentation to the decisionmaker of the positions of those to be affected by the decision.").

FIFRA elsewhere reinforces the understanding that a "public hearing" is conditioned on the giving of public notice of the agency's pending action. In 7 U.S.C. § 136d(b), FIFRA sets out, among other things, how EPA can cancel the registration of a pesticide or change its classification. Once EPA notices intent to do either, its proposed action "shall become final" unless "the registrant makes the necessary corrections . . . or . . . a request for a hearing is made by a person adversely affected by the notice." 7 U.S.C. § 136d(b). EPA may also choose at its discretion to hold a hearing. *Id.* Section 136d(d), entitled "*Public hearings* and scientific review," details the requirements for that hearing, including that it "shall be held after due notice." *Id.* § 136d(d) (emphasis added).

In keeping with that understanding, we have exercised direct review of EPA actions under FIFRA only when the

agency provided public notice of its prospective actions to anyone potentially affected by them. In *Center for Biological Diversity v. EPA*, for instance, we directly reviewed EPA action that followed "three notice and comment periods." 861 F.3d 174, 187 (D.C. Cir. 2017). Likewise, in *Humane Society of the United States v. EPA*, we directly reviewed EPA action taken after "applications for experimental use permits were published in the Federal Register, and interested parties were invited to submit written comments." 790 F.2d 106, 111–12 (D.C. Cir. 1986) (footnote omitted).

Here, however, because the applications did not involve a new active ingredient or changed use pattern, EPA did not give public notice before issuing the 2020 Registrations and the 2022 Amendments. *See* 7 U.S.C. § 136a(c)(4). Those actions thus were not preceded by notice-and-comment periods, publication in the Federal Register, or any other form of notice to interested parties. But some form of public notice is integral to the availability of direct court of appeals review because FIFRA limits such review to petitioners filed by individuals who were "part[ies] to the proceedings" before the agency. *Id.* § 136n(b). And individuals cannot become "part[ies] to the proceedings" before EPA unless they are aware of the proceedings in the first place.

We need not resolve in this case whether, and in what circumstances, public notice of a pending agency action might suffice to render the agency's deliberations a "public hearing" within the meaning of FIFRA. Rather, because EPA gave no public notice of its consideration of the challenged actions, we need decide only whether public notice is *necessary* to render an agency proceeding a "public hearing" for purposes of 7 U.S.C. § 136n(b). Our answer to that question is yes.

It is true that, notwithstanding the absence of public notice in this case, dozens of interested parties—including the Growers and intervenors—submitted unsolicited comments to EPA in advance of the agency's issuance of the challenged orders. Those comments had the effect of providing the agency with some sort of record to consider before granting the 2020 Registrations and 2022 Amendments. Given that EPA considered the comments before acting, a party who submitted unsolicited comments could in some sense be considered a "party to the proceedings" before the agency. 7 U.S.C. § 136n(b). And the administrative record resulting from the submission and consideration of those comments might be thought adequate to facilitate meaningful judicial review.

But record adequacy alone does not mean a "public hearing" took place. Dispensing with any requirement of public notice based on the perceived adequacy of the record could preclude affected parties who are not before us—and who did not participate in (and perhaps were unaware of) the proceedings before the agency—from obtaining judicial review in any forum. Such parties would be barred from seeking review in our court because they would not have been a "party to the proceedings" before the agency. *Id.* Nor could they seek review in district court given that our jurisdiction would be "exclusive." *Id.* No matter the state of the record, the Congress that conditioned direct court of appeals review of an EPA order on a "public hearing" presumably did not intend to preclude an adversely affected party from obtaining judicial review in any forum even though it may have lacked any notice of an opportunity to participate in the agency's pending action.

Our decision in *Environmental Defense Fund v. Costle*, 631 F.2d 922 (D.C. Cir. 1980), does not compel a different conclusion. To be sure, we viewed "the existence of an adequate record" to be a central consideration in the

circumstances of that case "in deciding if an order followed a public hearing" for purposes of determining our jurisdiction under 7 U.S.C. § 136n(b). *Id.* at 932. And we concluded that EPA's challenged action had followed a public hearing even though there had been a "lack of public notice" preceding it. *Id.* at 927. But *Costle* involved highly unique circumstances in which there had been public notice at prior stages of the administrative process, such that any party affected by the ultimate challenged action would have had notice and an opportunity to participate in the proceedings giving rise to it.

In particular, EPA had initiated a proceeding to determine whether unrestricted use of a pesticide named chlorobenzilate should continue, and "[w]ritten public participation in the preliminary notice and comment stage of . . . [the] process was invited." *Id.* at 924. After that proceeding, EPA published a notice of intent to cancel registration of the pesticide in the Federal Register. *Id.* (citing Notice of Intent to Cancel Registrations and Deny Applications for Registration of Pesticide Products Containing Chlorobenzilate, 44 Fed. Reg. 9,548 (1979)). The petitioning parties in our court submitted comments during that notice-and-comment proceeding and then requested an administrative hearing to challenge the intended cancellation, which an ALJ denied. *Id.* at 925–26. The petitioners administratively appealed the ALJ's decision denying their request for an administrative hearing, and EPA affirmed the ALJ's decision. *Id.* We then reviewed EPA's refusal to hold an administrative hearing and affirmed that decision. *Id.* at 933–39.

The challenged agency action in *Costle*—EPA's denial of the petitioners' request for an administrative hearing—arose directly from actions in which EPA had given public notice to interested parties: a public notice-and-comment proceeding on whether to maintain the registration of a pesticide and an

ensuing public notice of intent to cancel the registration. Even though EPA did not again provide notice before denying the petitioners' request for an administrative hearing to challenge the intended cancellation, all parties who would have been adversely affected by that denial necessarily would have been affected by the subject of the hearing—the intended cancellation of the pesticide. And because EPA gave public notice and solicited participation before issuing the intended cancellation, any affected parties were on notice and had an opportunity to do what the petitioners did: submit comments, request a hearing to challenge EPA's intended cancellation, and then petition for judicial review of EPA's denial of that request. In other words, any such parties could have become "a party to the proceedings" before EPA and later sought direct review in a court of appeals because EPA had given public notice that it intended to cancel the pesticide. 7 U.S.C. § 136n(b).

For substantially similar reasons, the Ninth Circuit's exercise of jurisdiction in *National Family Farm Coalition*, 960 F.3d 1120, involved circumstances materially different from those we face here. The Ninth Circuit there, as noted, directly reviewed a challenge to the 2018 Registrations, even though the 2018 Registrations themselves had not been preceded by public notice. But the 2018 Registrations were a direct outgrowth of the 2016 Registrations in that they merely renewed the 2016 Registrations, and the 2016 Registrations had been preceded by a notice-and-comment period. The Ninth Circuit "conclude[d] that the 2018 registration decision was issued by the EPA 'following a public hearing'" because "the decision ar[ose] from a notice-and-comment period held prior to the related 2016 registration decision." *Id.* at 1132. That could also be said of the challenged action in *Costle*: EPA's denial of the petitioners' request for an administrative hearing

in that case directly "arose from" a notice-and-comment period and subsequent publication in the Federal Register.

The same cannot be said, though, of the 2020 Registrations and 2022 Amendments at issue here. Those actions, unlike the challenged orders in *Costle* and *National Family Farm Coalition*, did not arise directly from prior actions as to which there had been public notice. We thus cannot be certain that all parties potentially affected by the 2020 Registrations and 2022 Amendments had received notice in advance of those actions. Although both actions involve dicamba products that had been approved in the 2018 Registrations, they do not arise from those registrations or the related 2016 Registrations. Instead, the 2020 Registrations and 2022 Amendments were the product of entirely new proceedings. After all, the Ninth Circuit vacated the 2018 Registrations in *National Family Farm Coalition*, and EPA then cancelled them. What is more, the 2020 Registrations were not mere reinstatements of the previous registrations. Rather, the 2020 Registrations unconditionally approve the dicamba products, whereas the previous orders had granted conditional registrations. And EPA needed to make additional findings to issue an unconditional registration, including that use of the products would "not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(D). For those reasons, the 2020 and 2022 Registrations, unlike the actions in *Costle* and *National Family Farm Coalition*, did not follow a "public hearing" within the meaning of 7 U.S.C. § 136n(b).

\* \* \* \* \*

For the foregoing reasons, we dismiss the petitions for review for lack of jurisdiction.

*So ordered.*

Rao, *Circuit Judge*, concurring: The court's opinion faithfully applies circuit caselaw, and I join it in full. I write separately to note that our precedents are inconsistent with the text of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). FIFRA provides generally for judicial review in the district court but allows for a direct petition for review in the court of appeals following a "public hearing." Our cases have blurred the clear jurisdictional line drawn by Congress, accepting petitions for review in a wider and undefined set of circumstances. By departing from FIFRA's straightforward allocation of jurisdiction, we have generated substantial and wasteful confusion as to where litigants must file. In an appropriate case, this court should reconsider the issue en banc to set out a clear rule that is faithful to the statutory text.

\* \* \*

Section 16 of FIFRA provides for judicial review. In general, and "[e]xcept as otherwise provided" in the Act, final actions of the Administrator of the Environmental Protection Agency ("EPA") are "judicially reviewable by the district courts." Federal Environmental Pesticide Control Act of 1972, Pub. L. No. 92-516, 86 Stat. 973, 994 (codified as amended at 7 U.S.C. § 136n(a)). FIFRA specifies limited direct review in the court of appeals: "In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may" file a petition for review in the court of appeals. 7 U.S.C. § 136n(b).

The phrase "a public hearing," both on its own terms and in context, refers to some type of quasi-judicial proceeding before the agency. A petition for review in the court of appeals follows "a" hearing, namely a single, discrete proceeding,

rather than, for instance, an extended and non-adversarial period of public comment. Such petitions may be filed only "[i]n the case of actual controversy" and only by "a party to the proceedings," *id.*, requirements that plainly reference some type of quasi-judicial proceeding over a controversy with identifiable parties. The public hearings must occur at specified times, i.e., be actual hearings, with advance notice in the Federal Register. *Id.* § 136s(d). Moreover, FIFRA explicitly provides for district court review over actions "*not following a hearing* and other final actions," confirming that a "hearing" is the decisive and bright line between ordinary review in the district courts and a direct petition for review in the courts of appeals. *Id.* § 136n(a) (emphasis added).

This jurisdictional line is further confirmed by section 6 of FIFRA, which describes how "public hearings" operate and confirms that "hearings" are a type of quasi-judicial proceeding. When the EPA is considering whether to cancel a pesticide's registration or change the pesticide's classification, the Administrator must post notice, following which he may hold a hearing or a "person adversely affected by the notice" may request a hearing. *See id.* § 136d(b). Under a subsection titled "Public hearings and scientific review," FIFRA specifies that hearings include "receiving evidence relevant and material to the issues raised by the objections filed by the applicant or other interested parties, or to the issues" set forth by the Administrator in the notice. *Id.* § 136d(d). The hearings are conducted by a hearing examiner, who may issue subpoenas and hear live testimony, all guided by the Federal Rules of Civil Procedure. *Id.* If an expedited hearing is requested, it "shall be held in accordance" with the procedures for adjudication set out in the Administrative Procedure Act. *Id.* § 136d(c)(2).

The text and structure of FIFRA plainly provide that when there is an order issued after a "public hearing" that follows the procedures set out in section 6, parties may petition for review in the courts of appeals. In all other instances, they must proceed first in district court.

\* \* \*

Rather than follow the clear rule established by Congress, this circuit has expanded our jurisdiction to hear direct petitions for review by focusing not on the text of FIFRA, but instead on "legislative history and judicial policy." *Env't Def. Fund, Inc. v. Costle*, 631 F.2d 922, 927 (D.C. Cir. 1980). In *Costle*, this court held that despite a "lack of public notice, [an] absence of public participation, and [a] lack of any type of oral presentation by the parties," a decision by the EPA to *deny* a public hearing constituted an order following a public hearing. *Id.* at 927–28. The court summarily rejected the notion that "public hearing" should carry the same meaning in section 16 as it does in section 6. *Id.* It reached this conclusion despite the fact that section 6, on public hearings, explicitly cross-references section 16, on judicial review. *See* 7 U.S.C. § 136d(h). And the *Costle* court offered no reason from the text or structure of FIFRA for defying the commonsense interpretive rule that "[a] word or phrase is presumed to bear the same meaning throughout a text." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (2012). The court glossed over the statutory text, relying instead on FIFRA's legislative history and on Congress's purported (but unexpressed) desire to channel cases to the courts of appeals whenever there is a seemingly adequate record for judicial review.

Subsequent cases have not gone as far as *Costle*'s anomalous holding but have held the phrase "public hearing" at least encompasses any decision following notice and comment. *See Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 187 (D.C. Cir. 2017); *Humane Society of U.S. v. EPA*, 790 F.2d 106, 111–12 (D.C. Cir. 1986). These holdings also cannot be squared with the language of FIFRA. As explained above, the phrase "public hearing," for the purpose of a petition for review in a court of appeals, refers to the hearings described in section 6. Moreover, notice and comment proceedings fit poorly with the text of section 16, which, as discussed, assumes the public hearings will be discrete quasi-judicial proceedings that occur at specific times and with identifiable parties adversely affected by an order and involved in an "actual controversy."

\* \* \*

Our departure from FIFRA's text has had serious practical consequences. Because we have no clear rule as to which proceedings constitute a "public hearing," it is common practice for parties to file a protective petition for review in the courts of appeals while simultaneously litigating in district court. Since petitions for review must be filed within 60 days of the order being challenged, *see* 7 U.S.C. § 136n(b), this is the only sensible approach. If litigants guess wrong and do not file a protective petition, they will almost certainly be time barred from refiling in the proper forum. *See, e.g.*, *United Farm Workers of Am., AFL-CIO v. EPA*, 592 F.3d 1080, 1083 (9th Cir. 2010). The result is years of unnecessary litigation. The problem is apparent in this very case. All the parties agree we lack jurisdiction, yet proceedings in the district court have been stayed for months pending our resolution of the petition for review.

This state of affairs is wasteful and unnecessary. *Costle* rests on an atextual and largely discredited approach to statutory interpretation that substitutes judicial policymaking for Congress's carefully enacted policies. The judicial review provision of FIFRA imposes a simple, bright-line rule, directing parties to proceed in district court unless the agency has held a "hearing" by invoking the procedures set forth in section 6. In an appropriate case, this court should consider revisiting en banc the proper interpretation of FIFRA's judicial review provisions to align our jurisprudence with the language of FIFRA and to provide the elementary predictability that follows from having a clear filing rule.